In The United States District Court.
Southern Illinois

Donnell Green #M16889
Plaintiff

Warden Kimberly Butler
Assistant Warden Williams
Nurse Walters
Nurse Misty, Nurse Suzanne
Practicioner Mc'Mglorn
Dr. Trost, Dr. Travis, Dr. Fuentes
Wexford Health Sources
     Defendents

Case No: 17-93-NJR

SCANNED AT MENARD and E-mailed
3-2-17  by SG  77 pages
date    initials  No.

**I Jurisdiction:** This case arise under the Eighth Amendments to the United States Constitution, and is expressly authorized by 42 USC §1983 as a civil claim to redress the deprivation of rights under color of state law. Accordingly this court has jurisdiction over this case pursuant to 28 USC §§ 1331 and 1343(a)(3). Venue is proper in the Souther District of Illinois

**Parties**

1. The plaintiff Donnell Green was at all material times relevant to this action a resident at Menard Corr Ctr (MCC)

2. The defendents Nurse Suzanne, Nurse Misty, Nurse Walters was at all material times were nurses at MCC acting under color of state law. It was the duty of defendents to provide necessary medical care and treatment. Is sued in their indivisual and official capacity.

3. Defendent Dr. Travis and Dr. Fuentes were at all material times were Doctors at MCC acting under color of law. It was duty to provide necessary medical care and treatment, is sued official and Indivisual Capacity

The defendents physician assistants Moldenhaur and McGlorn were at all material times physician assistants at MCC and had the ability and duty and power to obtain necessary medical care to plaintiff. Is sued in there indivisual and official capacity

4. The Defendent DR. Trost was at all material times was a surgeon and Medical Director at MCC who have the primary responsibility for the examination, diagnosis and care of inmates including the plaintiff. I sued in his indivisual and official capacity.

The Defendent Warden Kimberly Butler and Asst. Warden Anthony Williams were at all times Wardens at MCC, was acting under the Color/pretense of law. The wardens are responsible for the safety and well being of inmates. They are being sued in their official and indivisual capacty.

5. The defendent Wexford Health Sources did employ John Trost as medical director at M.C.C. and was at all times engaged in the business of providing medical care, professionals and services. Is being sued indivisually and officially.

6. Grievance History

Plaintiff filed grievance 5/20/16 that has been denied within MCC as of 6/28/16. That Grievance has been denied by the A.R.B on 2/9/17 GRIEVANE # 30-6-16

7. Previous lawsuits
NONE

## Statement of facts

8. This is a Civil rights complaint filed by Donnell Green (Plaintiff) a state of Illinois prisoner. This issue happened in Menard C.C. on January 19th 2015. This section is bought under 42 U.S.C section 1983, alleging United States Constitutions Eight amendment. The Americans with Disabilities Act.

9. The Gravaman of this complaint is that on January 19, 2015 plaintiff was playing basketball in the rec area and he severely hurt his right knee and collasped in pain. Unable to walk Plaintiff was wheelchaired by Defendent Nurse Misty to the Health Care Unit (HCU) and was examined by Defendent Nurse Suzanne.

10. Nurse Suzanne stated that plaintiff got what he deserved then noted plaintiff had knee/damage/ligament tear, then gave plaintiff IB profens and a 48 hour lay-in, and a requested a x-ray, then forced plaintiff to limp back to North II cell house which is over 100 yards. (See Exibit #1)

11. On february 15, 2015 Plaintiff was seen via sick call by Defendent Misty for unimproved pain and range of motion. Defendent Misty told plaintiff he will have pain for at least a year then rushed him out of her office in less than 45 seconds and did nothing further.

12. On June 26, 2015 Plaintiff was seen by Defendent Trost for right knee pain and potential ligament damage. Defendent Trost examined plaintiff's knee with his hands. Plaintiff suggested he may have knee tear, Defendent responded by saying he knew what a torn ligament was and that plaintiff only had a strain then gave plaintiff Naproxin 750 mg, a knee sleeve and requested a second x-ray. Plaintiff requested a MRI and in response Defendent Trost told plaintiff he'll have to get one once he gets out.
See EX 2A, 2B

13. August 1, 2015 Plaintiff was seen by Defendent Dr. Travis for future exam. Upon information and belief. Plaintiff complained of right knee pain, popping, buckling, limited movement. Defendent Dr. Travis told plaintiff that he had arthritis from previous injury and nothing more. (See EX #3)

14. On August 19, 2015 Upon information and belief plaintiff was seen by Defendent Dr. Fuentes for completion of physical exam, plaintiff requested a MRI Dr. Fuentes stated that it's not going to happen because the state would be broke if they gave out MRI's to everyone who asked for them. (See EX 4)

15. On September 12, 2015 plaintiff severely hurt his right knee while simply stretching in his cell and was seen the following day by an unknown nurse who referred plaintiff to doctor's call line due to severe swelling. (See EX-5)

16. Sept 17, 2015 Plaintiff was seen by Defendent Dr. Fuentes and or Defendent Moldenhaur and complained of having difficulty of just walking and going through daily life and the problem worsens any time he's out and about. Defendent placed his hand on plaintiff's right knee and diagnosed him with "Micro tears" and stated they will heal themselves since they were so small. Then stated plaintiff should not be playing sports at the age of 29 any longer, Defendent threatened to confiscate plaintiff's yard privilege if he continued to complain of right knee pain.

17. On February 9, 2016 Plaintiff while housed on 7 gallery in North II cell house was examined by Defendent McGlorn for right knee pain. Plaintiff was advised that the severe swelling was fluid, then plaintiff complained that he had been housed on 7 gallery on the top bunk since early January, 2016 and that it was difficulty and painful climbing the stairs daily so he asked defendent McGlorn for a bottom bunk and low gallery permit.

17. Defendant M°Gloren told plaintiff he does not qualify for a low gallery/low bunk permit then told plaintiff to do his best to climb the 7 flights of stairs and onto his top bunk. (see EX#7)

18. On february 16, 2016 Plaintiff wrote a letter to HCU administrator Gail Walls detailing history of events concerning knee issue and asked for help getting his letters and grievances answered. (see EX# 8)

19. On February 18, 2016 HCU administrator Gail Walls sent plaintiff a memo informing him that he is being presented to collegial for a MRI (see EX 9,10)

20. On March 18, 2016 plaintiff was taken to outside hospital to have MRI at Carbondale Hospital.

21. On May 3, 2016 plaintiff was taken to orthopaedic Institute for consultation with DR. Richard Morgan, Dr. Morgan informed plaintiff that he had a torn ACL/torn meniscus and bone contusions. Dr. Morgan opined that plaintiff initially tore his meniscus January 19, 2015 and as that went untreated he further tore his ACL from daily activities. (see ex 9)

22. On June 13, 2016 plaintiff underwent right knee surgery. (see EX 10)

23. On June 30, 2016 plaintiff while housed in HCU wrote Warden Defendent Kimberly Butler to request a medical transfer so he could attend a legitimate physical therapy program that M.C.C doest does not have. Plaintiff never heard from Defendent Kimberly Butler in response (see EX 12B)

24. On July 15, 2016 while still housed in HCU and not recieving physical therapy plaintiff wrote another letter to defendent Kimberly Butler requesting physical therapy or medical transfer for an opportunity to get physical therapy. (see EX. 12)

25. On July 22, 2016 plaintiff was taken to an outside hospital for physical therapy consultation and recieved a home excercise sheet.

26. On August 5, 2016 plaintiff recieved a memo stating that Defendent Trost ordered plaintiff to conduct physical therapy in the waiting room bullpen or a 6x8 doctor office and to be supervised by various co's (EK#30)

27. As to paragraph 26 this was the course of action from August 5, 2016 until September 22, 2016. Plaintiff was ordered to do excercises twice a day, 5 days a week in a tiny 6x8 office with various co's watching, devoid of any certified therapist or any equipment. Plaintiff was also ordered by his Surgeon to use the leg weight machines in the rec room.

28. On August 11, 2016 plaintiff was taken to the Orthopaedic Institute for a follow up post surgery. Dr. Morgan examined plaintiff's knee and then gave plaintiff orders and requested to see plaintiff in 3 months for follow up (see Ex16)

29. On August 11, 2016 after returning for a follow up plaintiff was issued by Defendent Trost a "low gallery", "low bunk", "slow walk" and a "no stairs permit". Plaintiff was then discharged from HCU and was moved to a high aggression East cell house. Upon arrival to the East house plaintiff protested the move to SGT. "SMITTY" due to concerns about the high potential for violence and his inability to defend himself because of the injury and not being able to shower due to showers being on 5 gallery and plaintiff living on 2 gallery. plaintiff had "no stairs" permit

30. On August 19, 2016 plaintiff reported to the HCU for a physical therapy session at 7:30 am but Nurse Williams canceled due to plaintiff already having done 6 sessions that week and she concluded that it must've been a scheduling error and that plaintiff should not have a high volume of sessions per week (see Ex23)

31. On August 19, 2016 Plainted reported to HCU for 4:30 pm session of physical therapy. Plaintiff informed nurse Randy that his right knee really hurted due to the strenous schedule of excercises he was ordered to perform by Defendant Trost. Nurse Randy responded that he really couldnt help because he wasnt a therapist but advised plaintiff to do what he could, then pick up intensity to see how his body responded.(Ex #23)

32. On August 21, 2016 plaintiff sent his fourth letter dated August 24, 2016 to assistant Warden Williams concerning the lack of physical therapy program and a medical transfer and also plaintiff's inability to shower while being in the east house because he couldnt travel up stairs.(see Ex 14)

33. On August 22, 2016 plaintiff was denied access to physical therapy by CO Martin. As plaintiff was being escorted to "PT" by co martin, Martin became upset because plaintiff walked too slow, Martin then returned plaintiff to his cell and stated "you've not going anywhere now."

34. On August 22, 2016 plaintiff reported to the HCU for the 4:30 pm session of "PT" Plaintiff informed staffed nurse that his right knee was experiencing pain and discomfort. Nurse responded that it wasnt anything he could tell plaintiff.

35. On August 23, 2016 plaintiff reported to HCU for the 4:30 session of physical therapy. Plaintiff complained to Nurse Williams that he was dealing with stiffness, aching, and buckling in the right knee. Nurse Williams stated she'd put plaintiff in to see defendent Trost. Plaintiff never saw Defendent Trost due to Trost cancellations (Ex 25)

36. On September 5, 2016 Plaintiff personally spoke to defendent Anthony Williams when he toured the east house. Plaintiff requested help with a medical transfer so he could get legitimate PT and plaintiff asked for help because he was unable to shower because plaintiff could not travel up the stairs. Defendent Anthony Williams responded that medical transfers dont exist and that he hadnt read plaintiff letters yet and walked off and did nothing further.

37. On September 8, 2016 plaintiff attended the 7:30 am session of physical therapy in the HCU bullpen. Plaintiff had difficulty during and after PT from fatigue related to the strenous schedule, so plaintiff asked defendent nurse walters who for assistance and she responded "I'm not a therapist." Plaintiff then asked nurse walters for an ice pack to ease the pain and swelling in his knee after the session and defendent nurse wolters responded "I'm not giving you ice, your knee is supposed to hurt because you had surgery. I dont put ice on my knee when it hurts, I'm not giving you ice for that.(ex#1)

38. On September 9, 2016 plaintiff attended the 7:30 am session of of physical therapy. Plaintiff complained of a burning pain in his right knee while performing excercises to defendent Nurse Walters. Defendent Walters responded to plaintiff by saying "oh well"- Nurse walters did nothing to assist plaintiff. (ex#26)

39. On September 12, 2016 plaintiff filled out sick call request for complications in his right knee. Plaintiff stated it feels like its gonna retear when I try certain excercises.(ex#27)

40. On September 13, 2016 plaintiff was seen at sick call in regards to complants of knee complications. As to paragraph 39. Physician told plaintiff to drink plenty of water and did nothing else.(ex#29)

41. On September 19, 2016 Plaintiff was informed that he would not be able to attend "PT" because there was no room in the HCU bullpen. (Ex 29)

42. On september 29, 2016 plaintiff was moved from the east house to North 2 cell house. North 2 cell house has no access to the rec room. Plaintiff complained because he would not be able to progress his therapy by using the stationary leg weights. Plaintiff's surgeon specifically ordered plaintiff to use the leg weights and North 2 inmates have no access to such equipment where plaintiff lives. (Ex #16)

43. On November 9, 2016 plaintiff recieved a memo stating that he was being denied for his 3 month follow up with his surgeon. Dr. Richard Morgan requested to see plaintiff August 11, 2016 and still to this day, plaintiff has been repeatedly denied. (Ex #17, #18)

44. On December 5, 2016 plaintiff went to sick call and complained of knee discomfort and pain was bothering him. Defendent Moldenhaur renewed plaintiff's permits and suggested that plaintiff return back to excercising and running to lose the excessive weight plaintiff complained of gaining.

45. On December 29, 2016 plaintiff went to sick call and spoke to defendent Trost to complain of complications from the improper rehab. plaintiff was ordered to perform and the excessive weight gain. Defendent Trost said he'll present plaintiff to collegial for a follow up with the ortho and advised plaintiff that it has been far enough post surgery so plaintiff should not be afraid to run or jog and doi jumping Jax or intense activities.

46. On January 2, 2016 plaintiff aggravated knee while running causing pain.

47. On January 4, 2017 Plaintiff recieved a letter in the mail from his ortho Surgeon encouraging plaintiff to come in for a follow up the best way he could and advising plaintiff not to do any running, jogging etc. (see Ex #18)

M16889
Donnell Green
PO Box 1000
Menard, IL 62259

## Cause of Action

### Count I

Plaintiff was subjected to cruel and unusual punishment in Violation of the 8th Amendment To The Constitution.

44. Plaintiff incorporates paragraph 1 through 43 as though they were stated fully herein.

45. Defendent Suzanne violated plaintiff's 8th Amendment right to be free from cruel and unusual punishment by failing to perform prompt physical exam, noting plaintiff had potential ligament tear but failing to refer plaintiff to Hospital for appropriate testing on leg and forcing plaintiff to limp from HCU to North II cell house which is over 100 yards.

46. Defendent Misty Thompson violated plaintiff's 8th Amendment right to be free from cruel and unusual punishment by failing to perform prompt physical exam and telling plaintiff "Be cool these things take a year to heal" and telling plaintiff he'll never get a MRI and failing to provide plaintiff with necessary medical care in deliberately delaying his medical care lending to deliberate indifference.

47. Defendent Dr. Fuentes violated plaintiff's 8th Amendment right to be free from cruel and unusual punishment by failing to perform prompt examination and failing to recognize plaintiff exibited common signs of torn meniscus and failing to refer plaintiff to hospital for appropriate testing leading to a torn ACL that required surgery. Deliberate delaying amounting to deliberate indifference.

48. As a direct result of these acts and omissions by the defendent DR. Fuentes plaintiff suffered unnecessary pain pre and post surgery

50. Defendant DR. TRAVIS violated plaintiff's 8th Amendment right to be free from cruel and unusual punishment by failing to peform prompt physical exam and failing to recognize plaintiff exibited common signs of torn meniscus and failing to refer plaintiff to hospital for further testing which lead to a torn ACL that required surgery.

51. Defendant DR. TRAVIS deliberately delayed plaintiff medical treatment leading to deliberate indifference causing pain and further injury (TORN ACL)

52. As a direct result of these acts and omissions by the defendent DR. Fuentes, plaintiff suffered unnecessary pain pre surgery.

53. Defendent Michael Moldenhaur violated plaintiff's 8th amendment right to be free from cruel and unusual punishment by failing to peform meaningful and prompt exam and failing to recognize plaintiff exibited common sign of torn meniscus and failing to refer plaintiff to hospital for appropriate testing which lead to a torn ACL that required surgery.

54. Defendent Moldenhaur deliberately delayed plaintiff's medical treatment leading to deliberate indifference causing pain and further injury (TORN ACL)

55. As a direct result of these acts and omissions by the defendent DR. Moldenhaur, plaintiff suffered unnecessary pain pre and post surgery.

56. Defendent Nurse Walters violated plaintiff's 8th Amendment right to be free from cruel and unusual punishment by failing to recognize plaintiff exibited common signs of ACL and meniscus reconstruction and conducting plaintiff's physical therapy session uncertified or unlicensed as a therapist, then refusing plaintiff treatment of ice pack to place on his swelling knee.

57. As a direct result of these acts and omissions by defendent Walters, plaintiff suffered unnecessary pain post surgery.

58. Defendent McGlorn violated plaintiff's 8th Amendment right to be free from cruel and unusual punishment by failing to recognize plaintiff exibited common signs of ~~cruel and unuso~~ a torn ACL/torn meniscus, failing to perform prompt and meaningful physical exam, and failing to refer plaintiff to hospital for appropriate testing, by not issuing plaintiff a low gallery/low bunk permit forcing plaintiff to climb 7 flights of stairs daily and misdiagnosing plaintiff with mere fluid on his knee. (see ex 6A, 6B)

59. As a direct result of these acts and omissions by defendent McGlorn, plaintiff suffered unnecessary pain pre-surgery

60. Defendent Trost violated plaintiffs 8th Amendment right to be free from cruel and unusual punishment by failing to recognize plaintiff exibited commons signs of torn meniscus and failing to perform a meaningful prompt exam and telling plaintiff he only had a knee strain after placing fingers on plaintiff's knee. (see ex #28)

A. By deliberately delaying leading to deliberate indifference in providing ~~treatment~~

B. By failing to refer plaintiff to Hospital for appropriate testing and ~~treatment without deliberate indifference~~ delaying by telling plaintiff he'll have to wait until he gets out of jail to get a MRI and failing to provide significant aftercare. (See Ex 31)

C. When he did not provide plaintiff with physical therapy immediately after surgery. (See Ex 31)

D. When he ordered plaintiff to a strenous "PT" schedule of 5 days a week / Twice a day with an untrained, unlicensed, uncertified correctional officer with no equipment in a 6x8 office.

E. When he denied plaintiff important follow up appointments requested by plaintiffs ortho surgeon. (see Ex's 12 A, B, C)

F. When he told plaintiff to pre-maturely start back running and doing jumping jax without certification to offer advisement on December 29, 2016.

61. From January 19, 2015 through December 2016 plaintiff went through a series of complaints and under/misdiagnosis for a right knee injury that ultimately required surgery. AT all times it was duty of Medical Director John Trost to excercise reasonable skill and care in the diagnosis and treatment of plaintiff.

62. As a direct result of these acts and omissions of the defendent Trost, plaintiff suffered unnecessary further injury pre and post operation.

63. Defendent Wexford Health Sources violated plaintiff's 8th Amendment right to be free from cruel and unusual punishment acting through its duly authorized agent and employee John Trost, M.D. did commit one of the following.

    A. Failed to perform prompt examinations and x-ray and test.

    B. Failed to recognized that the plaintiff exibited common signs of a torn meniscus.

    C. Failed to provide treatment needed when plaintiff had only a torn meniscus and failing to provide legit aftercare with rehabbing plaintiff. (SEE EX #31)

    D. Failed to refer plaintiff to hospital for appropriate testing and treatment.

    E. Denying plaintiff medical care by denying ortho's surgeon Richard Morgan the fellow appointment with plaintiff. (EX #18)

64. As a direct result of these acts and omissions by defendent, Wexford Health Sources, the plaintiff was caused and did cause and did suffer further injury (TORN ACL & bone contusions) and post surgery from an untrained/unlicensed physical therapy sessions where plaintiff continued to hurt himself

while attempting to conduct physical therapy with the assistance of various officers. creating permanent injuries.

Donnell Green M16889
PO BX 1000
Menard, IL 62259

## Claim II

1. Menard administration and staff have shown deliberate indifference to plaintiff's serious medical needs and violated the Americans with Disabilities Acts.

2. Plaintiff incorporates paragraph 1 through 64 as though they were stated fully herein.

3. Defendent McGlorn violated said act by noting plaintiffs knee history and current disformaties and failing to acknowledge plaintiff exibited common signs of torn ACL & meniscus and refusing to permit plaintiff low gallery low bunk permit status forcing plaintiff to climb seven flights of stairs daily, incited unnecessary pain. (see Ex 6A, 6B

4. Defendent Walkers violated said act by assisting plaintiffs illegit physical therapy session while being an untrained person then refusing to provide plaintiff medical treatment refusing to provide plaintiff with an ice pack for his obvious painful and swelling knees after a physical therapy session. (Ex 17)

5. Defendent Kimberly Butler violated said act when plaintiff frequently made her aware of his medical disability including a week after surgery and did nothing to accomomdate plaintiff serious needs (see Ex.12 & Ex 13.) (see Ex 15)

6. Defendent Anthony Williams violated said act when plaintiff wrote defendent Williams five times, and plantiff personally spoke to defendent Williams September 5, 2016 about the lack of physical therapy plaintiff was recieving at Menard and the fact that plaintiff couldnt travel to the showers because he had a no stairs permit and the showers were on 5 gallery and plaintiff lived on two gallery. Defendent did nothing but walk off on plaintiff never attempting to accomomdate plantiffs needs. (see Ex 15)

7. Defendant MD John Trost violated the ADA act by refusing plaintiff the significant aftercare after major knee surgery. (SEE EX #30). Then defendant Trost ordered plaintiff to excercise in a 6x8 doctor's office with no trained therapist nor equipment twice a day, 5 days a week with no professional input exacerbating Newly contructed knee. (see EX. 15.)

8. Defendant Trost denied plaintiff important follow up appointments with his surgeon despite surgeon's request to see plaintiff. (see EX 16, 18)

9. Defendant Wexford Health Sources violated the ADA act by acting through its authorized agent and employee John D Trost M.D. when it refused plaintiff immediate aftercare post surgery and significant aftercare with recovery from ACL and meniscus reconstruction by ordering plaintiff to do arbitrary workouts in a 6x8 office with no trained or qualified therapist to assist, only various co's assisting causing plaintiff guess reps and intensity with no equipment exacerbating newly reconstructed knee and not employing certified therapist. (See EX #15 & EX 30)

B. By denying plaintiff's follow up appointments with his surgeon despite his surgeon's order to see plaintiff for a follow up. (See EX 16, 18.)

M16889

PO BX 1000
Menard, IL 62259

V.  **REQUEST FOR RELIEF**

State exactly what you want this court to do for you. If you are a state or federal prisoner and seek relief which affects the fact or duration of your imprisonment (for example: illegal detention, restoration of good time, expungement of records, or parole), you must file your claim on a habeas corpus form, pursuant to 28 U.S.C. §§ 2241, 2254, or 2255. Copies of these forms are available from the clerk's office.

Wherefore, Plaintiff respectfully prays that this court.
A. Declare that the acts and omissions described herein violated Plaintiff's rights under the constitution and laws of The U.S.
B. Order Plaintiffs to pay compensatory and punitive damages.
C. Order Defendants to pay reasonable attorney fees and cost; and
D. Grant other just and equitable relief that this honorable court deems necessary

VI.  **JURY DEMAND** *(check one box below)*

The plaintiff ☑ does ☐ does not request a trial by jury.

## DECLARATION UNDER FEDERAL RULE OF CIVIL PROCEDURE 11

I certify to the best of my knowledge, information, and belief, that this complaint is in full compliance with Rule 11(a) and 11(b) of the Federal Rules of Civil Procedure. The undersigned also recognizes that failure to comply with Rule 11 may result in sanctions.

Signed on: FEB 20, 2016
(date)

Signature of Plaintiff: Donnell Green #M16889

PO BX 1000
Street Address

Printed Name: Donnell Green M16889

Menard IL 62259
City, State, Zip

Prisoner Register Number: M16889

Signature of Attorney (if any)

(Rev. 7/2010)                    6

United States District Court
Southern District of Illinois

Donnell Green
    Plaintiff

Case NO: 17-93-NJR

VS

Kimberly Butler, et al.
    Defendants

## Certificate of Service

The undersigned hereby certify that on February 23, 2017 the foregoing document Plaintiff's 1983 lawsuit Green vs Butler was placed in the mail ie, plaintiff's cell bars to prison's law library to get e-filed.

Plaintiff received District Court's notice to amend plaintiff's complaint on February 14.

Plaintiff has not been able to electronically file due to schedule conflict and prison lock downs.

Respectfully submitted

Donnell Green #M16889
P0 BX 1000
Menard, IL 62259