IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **DONNELL GREEN,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 17−cv−0093−NJR |
| ) | |
| **KIMBERLY BUTLER** ) | |
| **ANTHONY WILLIAMS,** ) | |
| **WALTERS,** ) | |
| **MISTY,** ) | |
| **SUZANNE,** ) | |
| **MCCLORN,** ) | |
| **TRAVIS,** ) | |
| **TROST,** ) | |
| **FUENTES,** ) | |
| **WEXFORD HEALTH SOURCES, and** ) | |
| **MOLDENHAUR,** ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff Donnell Green, an inmate in Menard Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. Plaintiff seeks declarative relief, damages, and fees and costs. This case is now before the Court for a preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
> (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or

1

(2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## The Complaint

Plaintiff originally filed suit on January 30, 2017. (Doc. 1). That Complaint was unsigned, however, so the Court issued an order directing Plaintiff to sign his Complaint on January 31, 2017. (Doc. 4). Plaintiff filed the Amended Complaint, which supersedes the original complaint, on March 2, 2017. (Doc. 5).

On January 19, 2015, Plaintiff was playing basketball, hurt his right knee, and collapsed in pain. (Doc. 5, p. 3). Nurse Misty took Plaintiff to the health care unit, where Nurse Suzanne examined him. *Id.* Suzanne told Plaintiff he "got what he deserved" and diagnosed Plaintiff with a ligament tear. *Id.* She gave Plaintiff ibuprofen, a 48 hour lay-in pass, and put him in for an x-ray. *Id.* She also required him to walk back to his cell house. *Id.*

On February 15, 2015, Nurse Misty saw Plaintiff at sick call to evaluate his pain and decreased range of motion. *Id.* Misty told Plaintiff that he would be in pain for a year, and took no further action. *Id.*

Doctor Trost evaluated Plaintiff for right knee pain and potential ligament damage on June 26, 2015. *Id*. Trost examined Plaintiff's knee. *Id.* He rejected Plaintiff's opinion that the problem was a torn ligament and instead diagnosed Plaintiff with a strain. *Id*. He prescribed Naproxen, a knee sleeve, and a second x-ray. *Id*. Plaintiff requested an MRI, but Trost told Plaintiff he would have to wait until he was released from Department custody. *Id*.

On August 1, 2015, Plaintiff saw Dr. Travis and complained of right knee pain, popping, buckling, and limited movement. (Doc. 5, p. 4). Travis diagnosed Plaintiff with arthritis due to his previous injury. Plaintiff saw Dr. Fuentes for a physical exam on August 19, 2015. *Id*. During that visit he requested an MRI, which Fuentes denied, because "the state would be broke if they gave out MRI's to everyone who asked for them." *Id*.

Plaintiff re-injured his right knee on September 12, 2015, while stretching in his cell. *Id*. He saw Fuentes and/or Moldenhaur for that issue on September 17, 2015. *Id*. Plaintiff complained he had difficulty walking and with the activities of daily life. *Id.* The health care professional[1] placed his hand on Plaintiff's right knee and diagnosed him with 'micro tears,' which he told Plaintiff would heal themselves. *Id*. He further told Plaintiff that he should not be playing sports at the age of 29, and threatened to confiscate Plaintiff's yard privileges if he continued to complain of knee pain. *Id.*

Plaintiff saw McGlorn for severe swelling on February 9, 2016. *Id.* He requested a low bunk/low gallery permit at that time, but McGlorn told him he did not qualify for those permits. (Doc. 5, pp. 4-5).

Plaintiff wrote a letter to HCU administrator Gail Walls on February 16, 2016. (Doc. 5, p. 5). Walls sent Plaintiff a memo informing him that Plaintiff would be presented to collegial

---

[1] The Complaint is unclear whether Plaintiff is referring to Fuentes or Moldenhaur.

review to request an MRI, which Plaintiff received on March 18, 2016. *Id*. Dr. Richard Morgan diagnosed Plaintiff with a torn ACL and torn meniscus. *Id*. Plaintiff underwent surgery on his right knee on June 13, 2016. *Id.*

After his surgery, Plaintiff requested to be transferred out Menard to a facility with a physical therapy program, but Butler did not respond to his request. *Id*. Plaintiff also made this request to Assistant Warden Williams on August 21, 2016, via letter and again in person on September 5, 2016. (Doc. 5, pp. 7-8). Instead, Plaintiff was taken for a physical therapy consultation and given a home exercise sheet. (Doc. 5, p. 5). Trost then made arrangements for Plaintiff to do those exercises in the waiting room bullpen or in a doctor's office in the health care unit under the supervision of a correctional officer. (Doc. 5, p. 6). Plaintiff was not given access to a therapist or any equipment. *Id*. Plaintiff was scheduled to exercise twice daily, 5 days a week. *Id*. He alleges that this schedule was overly aggressive and that he suffered knee pain as a result, which he repeatedly complained about to the nurses. (Doc. 5, pp. 7-8). Plaintiff complained to Walters, who told Plaintiff she was "not a therapist," and denied him an ice pack. (Doc. 5, p. 8). Walters refused to take any steps in response to Plaintiff's complaints about his therapy regimen. *Id*.

Plaintiff was taken for a follow up visit with Dr. Morgan on August 11, 2016. (Doc. 5, p. 6). Morgan ordered a subsequent follow-up visit, but Plaintiff was never permitted to go. (Doc. 5, pp. 6, 9).

Trost issued Plaintiff low gallery, low bunk, slow walk, and no stairs permits, but Plaintiff was housed in the East House, which effectively prevented Plaintiff from showering because the only showers in that cell block are on the fifth floor, and Plaintiff could not climb the stairs to get to them. (Doc. 5, p. 6). On September 29, 2016, Plaintiff was moved to the North 2

cell house, which had no access to the rec room, despite the fact that Plaintiff was instructed to strengthen his knee using stationary leg weights. (Doc. 5, p. 9).

When Plaintiff complained to Moldenhaur and Trost about his continued knee pain, which he attributes to the aggressive physical therapy routine, they both separately advised him to start running again. *Id*. On January 2, 2017, Plaintiff aggravated his knee while running. *Id*.

## Discussion

Based on the allegations of the Complaint, the Court finds it convenient to divide the *pro se* action into two counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court.

> **Count 1 –** Suzanne, Misty Thomson, Fuentes, Travis, Moldenhauer, Walters, McGlorn, Trost, Wexford, Butler, and Williams violated Plaintiff's rights under the Eighth Amendment when they delayed treatment, failed to properly evaluate Plaintiff, failed to refer Plaintiff for appropriate testing and treatment, failed to provide sufficient and appropriate aftercare and physical therapy post-surgery, and failed to transfer him to a prison that provided physical therapy;
>
> **Count 2 –** McGlorn, Walters, Butler, Williams, Trost, and Wexford have violated the Americans with Disabilities Act (ADA) and Rehabilitation Act (RA) by refusing to issue Plaintiff low gallery permits, provide him with adequate physical therapy, provide him with ice, accommodate his medical needs by arranging a transfer to another prison, and provide him with adequate aftercare.

As to **Count 1**, in order to state a clam for deliberate indifference to a serious medical need, an inmate must show that he 1) suffered from an objectively serious medical condition; and 2) that the defendant was deliberately indifferent to a risk of serious harm from that condition. An objectively serious condition includes an ailment that has been "diagnosed by a physician as mandating treatment," one that significantly affects an individual's daily activities, or which involves chronic and substantial pain. *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997). "Deliberate indifference is proven by demonstrating that a prison official knows of a substantial

risk of harm to an inmate and either acts or fails to act in disregard of that risk. Delaying treatment may constitute deliberate indifference if such delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012) (internal citations and quotations omitted); *see also Farmer v. Brennan*, 511 U.S. 825, 842 (1994). The Eighth Amendment does not give prisoners entitlement to "demand specific care" or "the best care possible," but only requires "reasonable measures to meet a substantial risk of serious harm." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Deliberate indifference may be shown where medical providers persist in a course of treatment known to be ineffective. *Greeno v. Daley*, 414 F.3d 645, 655 (7th Cir. 2005).

Plaintiff has alleged that he had a tear in the ACL and meniscus of his right knee. He has therefore plausibly alleged that he suffered from an objectively serious medical condition. Plaintiff also has alleged that the individual defendants repeatedly denied him treatment or failed to properly consider what treatment was needed. At the pleading stage, this is sufficient to allege the subjective element of a deliberate indifference claim against all the named defendants.

But Wexford must be dismissed from this case. Plaintiff did not include Wexford in his factual allegations. He alleged that Wexford was liable "through the duly authorized agent and employee, John Trost." (Doc. 5, p. 13). This is a *respondeat superior* theory of liability, and it is not cognizable under § 1983. *Monell v. Dept. Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978); *Shields v. Illinois Dep't of Corr.*, 746 F.3d 782, 786 (7th Cir. 2014). A corporation can be held liable for deliberate indifference only if it had a policy or practice that caused the alleged violation of a constitutional right. *Woodward v. Corr. Med. Serv. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004). *See also Jackson v. Ill. Medi-Car, Inc.,* 300 F.3d 760, 766 n.6 (7th Cir. 2002) (private corporation is treated as though it were a municipal entity in a § 1983 action). Plaintiff

makes no allegation that any individual defendant acted or failed to act as a result of an official policy espoused by Defendant Wexford. Wexford will be dismissed with prejudice from **Count 1**.

Additionally, Plaintiff has stated that he is suing all of the named defendants in their official and individual capacities. But individuals are not "persons" in their official capacities under § 1983 for the purposes of this suit. Plaintiff can only bring claims against individuals who were personally involved in the deprivation of which he complains. There is no supervisory liability in a § 1983 action; thus to be held individually liable, a defendant must be "'personally responsible for the deprivation of a constitutional right.'" *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (quoting *Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001)). Therefore, to the extent that Plaintiff has attempted to bring claims against any defendant in his official capacity under § 1983, those claims must be dismissed.

Turning to **Count 2**, the Seventh Circuit has instructed district courts to construe *pro se* litigant's claims of discrimination on account of a disability pursuant to both the ADA and the RA, whether or not the plaintiff has asserted a claim under the latter statute. *Norfleet v. Walker*, 684 F.3d 688, 690 (7th Cir. 2012). Plaintiff alleges that Defendants McGlorn, Walters, Butler, Williams, Trost, and Wexford violated the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*, by failing to accommodate his need for physical therapy, low gallery/low bunk permits, a medical transfer, ice, and other medical care. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability . . . be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

The Supreme Court has held that the ADA applies to prisons. In *Penn. Dep't of Corr. v. Yeskey*, 524 U.S. 206 (1998), the Supreme Court held: "State prisons fall squarely within the statutory definition of 'public entity'… The text of the ADA provides no basis for distinguishing these programs, services, and activities from those provided by public entities that are not prisons." *Id*. at 210. The Court further held in *United States v. Georgia*, 546 U.S. 151 (2006), that an inmate may bring a private cause of action for damages pursuant to Title II of the ADA if the state actor's conduct also violates the Eighth Amendment. A plaintiff's inability to establish a constitutional violation forecloses an ADA private cause of action. *See Morris v. Kingston*, 368 F. App'x 686 (7th Cir. 2010).

"In order to make out a prima facie case of discrimination under both the ADA and the RA, a plaintiff must show: (1) that he suffers from a disability as defined in the statutes, (2) that he is qualified to participate in the program in question, and (3) that he was either excluded from participating in or denied the benefit of that program based on his disability. *Jackson v. City of Chicago*, 414 F.3d 806, 810 (7th Cir. 2005). The Rehabilitation Act further requires that a plaintiff show that the program in which he was involved received federal financial assistance, which all prisons do.

The Court has determined that Plaintiff has adequately alleged a constitutional violation under the Eighth Amendment. Plaintiff claims that his mobility has been severely compromised due to his medical condition, and that he experiences pain and inability to do certain activities. This suggests that he may suffer from a disability within the meaning of the ADA and RA. The refusal to provide him with accommodations has arguably excluded him from participation in at least one physical activity, and the ability to meet his personal hygiene needs. At this stage, his allegations support a potential claim under the ADA and/or the RA, however, only the state

agency (or official acting in his/her official capacity) may be sued under the ADA and the RA. Employees of the Department of Corrections are not amenable to suit. *See* 29 U.S.C. § 794(b); 42 U.S.C. § 12131; *see Foley v. City of Lafayette,* 359 F.3d 925, 928 (7th Cir.2004). In his original complaint, Plaintiff named the Illinois Department of Corrections as a defendant. (Doc. 1). The Court thus presumes that the omission in the Amended Complaint is an unintended oversight. Accordingly, the Clerk shall be directed to add the Director of the Illinois Department of Corrections (official capacity only) as a defendant, and **Count 2** shall proceed against Defendant IDOC Director. All other defendants shall be dismissed from this Count with prejudice.

## Pending Motions

Plaintiff's Motions to Proceed *In Forma Pauperis* (Docs. 2, 6) will be addressed by separate order. Plaintiff's Motion to Appoint Counsel (Doc. 7) shall be referred to Magistrate Judge Wilkerson for disposition.

## Disposition

**IT IS HEREBY ORDERED** that **Count 1** and **Count 2** survive threshold review. Defendant Wexford Health Sources is **DISMISSED with prejudice**. Defendants McGlorn, Walters, Butler, Williams, and Trost are dismissed from **Count 2** with prejudice, although Count 1 proceeds against them. The Clerk of Court is **DIRECTED** to add the Director of the Illinois Department of Corrections (official capacity only) as a defendant to this case.

**IT IS ORDERED** that the Clerk of Court shall prepare for Defendants Suzanne, Misty Thomson, Fuentes, Travis, Moldenhauer, Walters, McGlorn, Trost, Wexford, Butler, Williams, and Director of the Illinois Department of Corrections: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The

Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each defendant's place of employment as identified by Plaintiff. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require that defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

**IT IS FURTHER ORDERED** that, with respect to a defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, the defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

**IT IS FURTHER ORDERED** that Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge Donald J. Wilkerson for further pre-trial proceedings.

Further, this entire matter is **REFERRED** to United States Magistrate Judge Donald G. Wilkerson for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

**IT IS FURTHER ORDERED** that if judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1)

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* Fed. R. Civ. P. 41(b).

**IT IS SO ORDERED.**

**DATED:** March 7, 2017

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**